IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMAAL BLANDING** : | **CIVIL ACTION** |
| : | |
| **v.** : | **NO. 21-1115** |
| : | |
| **FEDERAL BUREAU OF PRISONS,** *et al.* : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                        **November 4, 2021**

      The Supreme Court repeatedly reminds citizens of federal employees' limited liability in constitutional civil rights claims. These constitutional damages claims against federal officials are strictly limited to three contexts, including deliberate indifference by officials in federal prisons under the Eighth Amendment. The Supreme Court does not allow incarcerated persons to sue federal officials for conditions-of-confinement claims relating to non-medical conditions. We today address an incarcerated person's *pro se* claims against the Federal Detention Center's Warden and unknown prison officials for deliberate indifference arising from the Federal Detention Center's COVID-19 mitigation treatment and general non-medical conditions-of-confinement claims. The incarcerated person may only proceed against federal officials on deliberate indifference claims if he can show harm caused by the federal officials. The incarcerated person does not plead harm arising from COVID-19. He never contracted COVID-19, nor does he claim illness or harm. He also cannot proceed under his non-medical conditions-of-confinement claim against federal officials as a matter of law. We grant the incarcerated person leave to file an amended Complaint if he can allege facts allowing us to plausibly infer a deliberate indifference claim when he fortunately did not contract COVID-19 while incarcerated.

**I.      Alleged facts**

Jamaal Blanding began awaiting trial at the Federal Detention Center in Philadelphia in October 2018.[1] The COVID-19 pandemic affected the Federal Detention Center's daily operations in early 2020. The Centers for Disease Control ("CDC") promulgated standards prisons should follow to mitigate the spread of COVID-19 in March 2020.[2] Mr. Blanding alleges the Federal Detention Center did not implement the CDC's standards as the pandemic began.[3] The 100 inmates housed in Mr. Blanding's unit could not social distance because its "8 x 10" cells each contained two inmates.[4] The Federal Detention Center required no social distancing or cleaning standards compliant with CDC recommendations.[5] The Federal Detention Center provided "meager" testing for COVID-19, leaving it "unknown" whether inmates carried COVID-19.[6] At least 176 inmates at the Federal Detention Center contracted COVID-19.[7]

The Federal Detention Center instituted a quarantine in November 2020.[8] The Federal Detention Center twice tested Mr. Blanding for COVID-19, but he does not know the results.[9] The Federal Detention Center instituted a "modified lockdown" in December 2020.[10] The Federal Detention Center provided masks but not hand sanitizer to the incarcerated persons.[11] Mr. Blanding alleges the virus "continues to spread" among infected inmates and staff.[12]

Mr. Blanding sued the Federal Bureau of Prisons; Warden Sean Marler; "Unknown BOP Correction Officers Employed by the Federal Bureau of Prisons"; "Unknown Bueau [sic] of Prisons Medical Staff"; "Captain, FCI Philadelphia"; and "Unknown, Named Lieutenants" on March 5, 2021.[13] He alleges they violated: (1) the Fifth, Eighth, and Fourteenth Amendments through deliberate indifference to his medical needs; (2) the Eighth and Fourteenth Amendments by failing to employ policies complying with CDC recommendations; and (3) the Fifth, Eighth, and Fourteenth Amendments by conspiring to deny his constitutional rights.[14] He seeks monetary

damages for the alleged constitutional violations under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*.[15]

We dismissed the Bureau of Prisons with prejudice because it enjoys sovereign immunity from Mr. Blanding's claims.[16] We ordered Mr. Blanding to provide "more specific information" identifying the unknown defendants by August 30, 2021.[17] He did not do so.

**II. Analysis**

The only remaining Defendant, Warden Marler, now moves to dismiss Mr. Blanding's claims.[18] Warden Marler argues Mr. Blanding does not plead he had a serious medical need as required for a deliberate indifference claim, his conditions-of-confinement claim is not recognized under *Bivens*, and otherwise fails to state a claim.[19] Mr. Blanding did not respond.

Mr. Blanding seeks to bring *Bivens* claims. In *Bivens*, the Supreme Court recognized a damages action, "even absent statutory authorization," against federal officers who violated the Fourth Amendment.[20] The Court later recognized two other implied causes of action: one under the Fifth Amendment against a congressman for firing a woman based on gender discrimination,[21] and another under the Eighth Amendment where prison officials displayed deliberate indifference to a prisoner's medical need.[22] This trio comprises the only three "*Bivens* actions" the Supreme Court recognizes.[23] After recognizing these three causes of action, the Court cautioned against "expanding the *Bivens* remedy" as a "disfavored judicial activity."[24] Recognizing causes of action Congress has not authorized "risks arrogating legislative power."[25]

We dismiss Mr. Blanding's deliberate indifference claim because he does not plead he had a serious medical need or a prison official displayed deliberate indifference. We construe Mr. Blanding's separate count of "failure to provide medical treatment" as a conditions-of-confinement claim. We dismiss this claim and Mr. Blanding's conspiracy claim because we cannot recognize

these claims under *Bivens*. We grant Mr. Blanding leave to amend his Complaint if he can allege a cognizable claim within our limited subject matter jurisdiction.

        **A.    We dismiss Mr. Blanding's deliberate indifference claims.**

Mr. Blanding alleges prison officials "act[ed] with deliberate indifference to his medical needs" by failing to implement CDC policies which would have "ensure[d] the safety and well-being of the inmates and limit[ed] the spread of the COVID-19 virus."[26] The United States argues we should dismiss Mr. Blanding's deliberate indifference claim because he does not plead a "serious medical need."[27] We agree. We dismiss Mr. Blanding's deliberate indifference claim because Mr. Blanding does not plead a serious medical need or prison officials' deliberate indifference.

The Supreme Court permits a *Bivens* claim under the Eighth Amendment "where prison officials are deliberately indifferent to a prisoner's serious medical needs."[28] Mr. Blanding must plead two elements: (1) prison officials exhibited deliberate indifference to his medical needs, and (2) his medical needs "were serious."[29] Mr. Blanding pleads neither element.

Mr. Blanding does not plead a serious medical need. "A medical need is 'serious[]' . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[30] Mr. Blanding's "condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death."[31] Mr. Blanding does not plead he possessed a diagnosis or condition requiring medical treatment. Mr. Blanding does not allege he contracted COVID-19, became exposed to COVID-19, or suffered COVID-19 symptoms.[32] He merely alleges concerns about the Federal Detention Center's COVID-19 mitigation procedures. Such unmaterialized concerns regarding contracting COVID-19 do not constitute a serious medical need.[33]

4

Even if we could construe Mr. Blanding's concerns regarding COVID-19 as a serious medical need, Mr. Blanding does not plead a prison official displayed deliberate indifference to it. "Deliberate indifference requires significantly more than negligence."[34] Our Court of Appeals recognizes deliberate indifference where a "prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."[35] Mr. Blanding does not plead a prison official knew he needed medical treatment, delayed medical treatment, or prevented him from receiving treatment. He simply makes general complaints about the Federal Detention Center's policies. The prison officials shouldered no constitutional duty to "eliminate entirely [Mr. Blanding's] risk of contracting COVID-19."[36] The exigencies caused by this pandemic do not excuse Mr. Blanding from pleading prison officials' "requisite mental state."[37]

We join our colleagues dismissing *Bivens* claims against officials of the Federal Detention Center premised on their alleged failure to mitigate COVID-19.[38] We agree with their reasoning because Mr. Blanding does not plead a serious medical need or facts allowing us to infer a prison official's state of mind. We dismiss Mr. Blanding's deliberate indifference claim.

To the extent Mr. Blanding pleads a conspiracy claim of deliberate indifference, we dismiss it because Mr. Blanding does not plead an official's personal involvement.[39] To plead *Bivens* claims, Mr. Blanding must plead each prison official's "personal[] involve[ment] in the alleged denial of [his] rights."[40] "[A] *Bivens* cause of action based on a theory of deliberate indifference to a prisoner's proper medical care cannot generally lie against persons who had no direct involvement in that medical treatment."[41] Mr. Blanding does not plead acts the federal officials took to deny him medical care. He also does not plead an underlying violation the federal officials

5

conspired to commit. If Mr. Blanding is attempting to plead a state-law civil conspiracy claim, he must plead "1) a combination of at least two individuals acting with a common purpose of committing a criminal act or intentional tort, 2) an overt act in furtherance of this agreement, and 3) actual legal damage to the plaintiff."[42] Mr. Blanding pleads no actions prison officials took to violate his rights; he merely alleges the Federal Detention Center should have implemented different COVID-19 measures. He pleads no facts permitting us to infer a conspiracy. We dismiss this claim.

      **B.**      **We dismiss Mr. Blanding's non-medical conditions-of-confinement claims.**

Mr. Blanding alleges the Federal Detention Center "maintain[ed] unconstitutional policies" because it "failed to adequately staff, maintained inadequate video monitoring systems and cell checks, maintained inadequate inventory procedures which failed to properly identify at risk inmates and failed to train officers to identity and/or monitor at risk inmates for COVID-19 (i.e. Coronavirus) during the pandemic."[43] He also alleges prison officials "conspired" to prevent him from receiving "proper medical attention" by failing to implement appropriate policies.[44] The United States argues we should dismiss counts two and three of Mr. Blanding's Complaint, arguing conditions-of-confinement claims are not cognizable under *Bivens*.[45]

To determine whether a cause of action under *Bivens* exists, we undertake a two-part inquiry: (1) whether the claim "arises in a new context"; and, if so, (2) whether any "special factors . . . counsel hesitation" about expanding *Bivens*.[46] "[O]ur watchword is caution,"[47] as we must remain mindful Congress should "most often" decide "whether to provide for a damages remedy."[48] We cannot find Mr. Blanding pleads facts allowing us to find his remaining claims may proceed under *Bivens*.

       **1.**     **Mr. Blanding claims a new *Bivens* context.**

To determine whether a claim asserts a new *Bivens* context, we ask if "the case is different in a meaningful way from previous *Bivens* cases decided by" the Supreme Court.[49] This is a "broad" inquiry.[50] "A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider."[51]

Mr. Blanding's conditions-of-confinement claims assert a new *Bivens* context. Mr. Blanding cites the Fifth, Eighth, and Fourteenth Amendments in his conditions-of-confinement claims. These claims do not resemble the three *Bivens* contexts the Supreme Court recognizes.[52] Mr. Blanding does not allege a Fourth Amendment violation. He does not allege a Fifth Amendment violation based on gender discrimination. He attempts to allege one proper *Bivens* claim—an Eighth Amendment violation for deliberate indifference to medical needs—but as we discussed above, he does not plead sufficient facts.[53] His alternative claims alleging constitutional violations for conditions of confinement and conspiracy arise in a non-medical context which our Supreme Court has not recognized.[54] Judges outside our District reach the same conclusions.[55] We agree with these judges because the Supreme Court has not recognized this context.

       **2.**     **We do not recognize a *Bivens* claim for non-medical conditions of confinement.**

Once we recognize a new context, we must consider whether "special factors" counsel against recognizing a new *Bivens* claim.[56] "These factors include whether Congress has legislated on the right at issue[,] . . . whether alternative remedies exist for protecting that right[,] . . . and

7

separation-of-powers concerns."[57] Our primary inquiry is "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."[58]

Judges are not "well suited" to create a damages action for claims based on federal jails' COVID-19 responses, which are issues best left to the Legislature or Executive branches. As we earlier observed, "district judges are not epidemiologists."[59] The COVID-19 pandemic is an unprecedented international health crisis necessitating complex mitigation efforts. Prisons have undertaken "extensive and professional efforts to curtail the virus's spread."[60] We must remain mindful "a *Bivens* action is not 'a proper vehicle for altering an entity's policy.'"[61] We should not authorize a damages remedy which would allow prisoners to litigate the propriety of prisons' COVID-19 policies. Authorizing *Bivens* actions for damages regarding federal jails' COVID-19 practices "would undoubtedly impose a large burden on the judiciary," which is not equipped to litigate these issues without Congressional guidance.[62]

We agree with Judge O'Connor's reasoning in recently declining to recognize a *Bivens* claim like Mr. Blanding's.[63] An incarcerated person alleged prison officials violated the Eighth Amendment due to "inadequate staffing, overcrowding, inadequate social distancing, lack of adequate sanitation, lack of adequate PPE, and failure to properly respond to the COVID-19 pandemic."[64] Judge O'Connor found three special factors counseled against recognizing a *Bivens* action.[65] First, Congress legislated prisoner litigation through the Prisoner Litigation Reform Act, which does not provide a damages claim against prison officials but likely would have if Congress intended to provide one.[66] Second, the Federal Tort Claims Act, which waives the United States' sovereign immunity from tort claims against federal employees in the course of their employment, provides an "alternative remedy."[67] Third, "separation-of-powers concerns" counsel against

expansion of *Bivens*, as "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government."[68]

Judge O'Connor's reasoning applies here as well. Congress has not authorized COVID-19-related damages suits against prison officials despite Congress's extensive legislative response to mitigate harm arising from COVID-19.[69] As the Supreme Court found in declining to create a *Bivens* remedy for illegal aliens jailed after the September 11, 2001 terrorist attacks, "the silence of Congress is relevant[,] and here that silence is telling."[70] We also note two alternative remedies besides the Federal Tort Claims Act: the writ of habeas corpus and motions for compassionate release, which incarcerated persons may use to seek release based on conditions of confinement during the pandemic.[71] Several judges join us in reaching the same conclusion as Judge O'Connor.[72] We decline to extend the *Bivens* remedy to this context. We dismiss Mr. Blanding's conditions-of-confinement claims against federal officials arising from their response to the pandemic in the Federal Detention Center.

### III. Conclusion

Mr. Blanding alleges federal employees with the Federal Detention Center displayed deliberate indifference to his medical needs and failed to implement appropriate procedures to mitigate the spread of COVID-19 during his incarceration. We are guided by the Supreme Court's limits on suing federal officials under *Bivens*. He may bring a deliberate indifference claim under *Bivens*, but he does not plead he had a serious medical need, prison officials displayed deliberate indifference, or did anything to violate his civil rights. We dismiss his conditions-of confinement-claims because we cannot recognize such claims under *Bivens*. We grant Mr. Blanding leave to

9

amend his Complaint if he can state cognizable deliberate indifference claims within our limited subject matter jurisdiction.

---

[1] ECF Doc. No. 1 at 2 ¶ 1, 4 ¶ 9, 6 ¶ 24. We cite to the Complaint's page numbers and paragraph numbers simultaneously when appropriate because the numeration repeats starting on page six.

[2] *Id.* at 4 ¶ 12.

[3] *Id.* at 5 ¶ 16.

[4] *Id.* at 5 ¶ 18.

[5] *Id.* at 5 ¶ 20.

[6] *Id.* at 5 ¶ 19.

[7] *Id.* at 5 ¶ 16.

[8] *Id.* at 6 ¶ 21.

[9] *Id.*

[10] *Id.* at 6 ¶ 22.

[11] *Id.*

[12] *Id.* at 6 ¶ 21.

[13] *Id.* at 1.

[14] *Id.* at 6–8.

[15] 403 U.S. 388 (1971); ECF Doc. No. 1 at 1, 9.

[16] ECF Doc. No. 10.

[17] ECF Doc. No. 13.

[18] ECF Doc. No. 17. Federal Rule of Civil Procedure 12(b)(6) requires a complaint to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit*

---

*Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim has facial plausibility when the plaintiff pleads factual content … allow[ing] the court to draw the reasonable inference … the defendant is liable for the misconduct alleged." *Robert W. Mauthe M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017)). While "[t]he plausibility standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility … a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C.*, 806 F. App'x at 152 (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). We must "liberally construe a *pro se* litigant's pleadings." *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011), *as amended* (Sept. 19, 2011).

[19] ECF Doc. No. 7-1 at 3–11.

[20] *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017) (citing *Bivens*, 403 U.S. at 397).

[21] *Id.* at 1854–55 (citing *Davis v. Passman*, 442 U.S. 228, 248–49 (1979)).

[22] *Id.* at 1855 (citing *Carlson v. Green*, 446 U.S. 14, 19 (1980)).

[23] *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017).

[24] *Ziglar*, 137 S. Ct. at 1857 (internal quotations omitted).

[25] *Hernandez v. Mesa*, 140 S. Ct. 735, 741 (2020).

[26] ECF Doc. No. 1 at 6–7.

[27] ECF Doc. No. 17-1 at 4–5.

[28] *Figueroa v. Pistro*, No. 21-0041, 2021 WL 601096, at *3 (E.D. Pa. Feb. 16, 2021) (citing *Carlson*, 446 U.S. 14). To the extent Mr. Blanding asserts separate violations of the Fifth or Fourteenth Amendments from prison officials' deliberate indifference, we cannot recognize those claims under *Bivens*.

[29] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

[30] *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).

[31] *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

[32] We question whether Mr. Blanding possesses standing to sue the federal officers. Standing requires "injury in fact." *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 162 (3d Cir. 2017) (internal quotations omitted). Mr. Blanding "must claim that he . . . suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 162–63 (internal quotations omitted). The United States did not raise this argument, and we dismiss Mr. Blanding's claims regardless. Mr. Blanding must allege injury in fact should he amend his Complaint.

[33] *See Hand v. Young*, No. 20-00784, 2021 WL 3206833, at *4 n.1 (E.D. Cal. July 29, 2021) (prisoner who merely alleged "concern" regarding "potential exposure to COVID while incarcerated . . . fail[ed] to allege a serious need"); *Darby v. Ellis*, No. 20-12944, 2021 WL 409780, at *4 (D.N.J. Feb. 5, 2021) ("Plaintiff does not state a claim for relief merely because he may have been exposed to COVID-19" in prison); *Umarbaev v. Lowe*, 453 F. Supp. 3d 698, 709 (M.D. Pa. 2020) (denying habeas relief based on petitioner's concerns regarding "potential risk of contracting the virus"). In the context of motions for compassionate release due to COVID-19, prisoners must show more than a "generalized, non-specific threat of harm due to the COVID-19 pandemic." *United States v. Medina*, No. 15-554, 2021 WL 1581608, at *5 (E.D. Pa. Apr. 22, 2021) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) and *United States v. Roeder*, 807 F. App'x 157, 161 (3d Cir. 2020)).

[34] *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 329–330 (3d Cir. 2020) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849–50 (1998)).

[35] *Rouse*, 182 F.3d at 197.

[36] *Hope*, 972 F.3d at 330 (emphasis removed).

[37] *Darby*, 2021 WL 409780, at *4.

[38] *See Diaz v. Pistro*, No. 21-2909, 2021 WL 3471169, at *3 (E.D. Pa. Aug. 6, 2021) (dismissing allegations defendants "were aware of the outbreak of COVID-19 in [the Federal Detention Center] but did nothing to prevent inmates from contracting the disease" because the "allegation fails to address how the defendants were deliberately indifferent"); *Adames v. Pistro*, No. 21-2855,

2021 WL 2903064, at *2 (E.D. Pa. July 9, 2021) (dismissing where prisoner did not "allege any facts from which it could be inferred that the conditions in which he was confined were constitutionally deficient"); *Figueroa*, 2021 WL 601096, at *4 (prisoner did not allege warden "was personally involved in matters related to his medical care").

[39] We do not decide whether we may entertain this claim under *Bivens*; we simply find even if we could, the claim lacks merit. *See Xiaoxing Xi v. Haugen*, No. 17-2132, 2021 WL 1224164, at *14 (E.D. Pa. Apr. 1, 2021) (citing *Jacobs v. Alam*, 915 F.3d 1028, 1038–39 (6th Cir. 2019)) (discussing bounds of "cognizable *Bivens* claims," including "civil conspiracy").

[40] *Farrar v. McNesby*, 639 F. App'x 903, 907 (3d Cir. 2016).

[41] *Figueroa*, 2021 WL 601096, at *3 (citing *Balter v. United States*, 172 F. App'x 401, 403 (3d Cir. 2006)); *see also Diaz*, 2021 WL 3471169, at *2 ("To be plausible, a *Bivens*-based claim must allege personal involvement by the named defendant.").

[42] *Graber v. Dales*, No. 18-3168, 2019 WL 4805241, at *8 (E.D. Pa. Sept. 30, 2019).

[43] ECF Doc. No. 1 at 7–8.

[44] *Id.* at 8.

[45] ECF Doc. No. 17-1 at 3–7.

[46] *Hernandez*, 140 S. Ct. at 743 (cleaned up) (citing *Ziglar*, 137 S. Ct. at 1857, 1859).

[47] *Id.* at 742.

[48] *Ziglar*, 137 S. Ct. at 1857.

[49] *Id.* at 1859.

[50] *Hernandez*, 140 S. Ct. at 743.

[51] *Ziglar*, 137 S. Ct. at 1860.

[52] *See Stone v. Wilson*, No. 20-406, 2021 WL 2936055, at *5 (N.D. Tex. July 13, 2021) (describing only three *Bivens* contexts).

[53] *See supra* Part I.A.

[54] *See, e.g.*, *Figueroa*, 2021 WL 601096, at *4 (it "would be inappropriate" to recognize a new *Bivens* remedy for Eighth Amendment claims based on serving poor food); *Menard v. Mansi*, No. 21-2130, 2021 WL 2156366, at *4 (E.D. Pa. May 27, 2021) ("non-medical care conditions of confinement" claims are a new context) (compiling cases).

---

[55] *See, e.g.*, *Stone*, 2021 WL 2936055, at *6 (prisoner's Eighth Amendment claims "including allegations of inadequate staffing, overcrowding, inadequate social distancing, lack of adequate sanitation, lack of adequate PPE, and failure to properly respond to the COVID-19 pandemic" constituted a new *Bivens* context because they did not allege improper medical care); *Gater v. Carvajal*, No. 220-146, 2021 WL 868433, at *3 (E.D. Ark. Feb. 23, 2021) (claims defendants "failed to protect" prisoner from COVID-19 "significantly differe[d]" from an "inadequate medical care claim[]"), *report and recommendation adopted*, No. 20-00146, 2021 WL 865274 (E.D. Ark. Mar. 8, 2021), *aff'd*, No. 21-1928, 2021 WL 4959015 (8th Cir. Aug. 4, 2021).

[56] *Ziglar*, 137 S. Ct. at 1857.

[57] *Stone*, 2021 WL 2936055, at *7 (first citing *Ziglar*, 137 S. Ct. at 1858, 1862; then citing *Hernandez*, 140 S. Ct. at 743).

[58] *Ziglar*, 137 S. Ct. at 1858.

[59] *United States v. Martin*, No. 98-178, 2021 WL 4169429, at *6 (E.D. Pa. Sept. 14, 2021) (quoting *United States v. Sherrod*, No. 19-20139, 2021 WL 3473236, at *5 (E.D. Mich. Aug. 6, 2021)), *appeal filed* (Oct. 13, 2021).

[60] *Raia*, 954 F.3d at 597.

[61] *Ziglar*, 137 S. Ct. at 1860 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)).

[62] *Hand*, 2021 WL 3206833, at *7.

[63] *Stone*, 2021 WL 2936055.

[64] *Id.* at *6.

[65] *Id.* at *6–7.

[66] *Id.* at *7 (citing *Ziglar*, 137 S. Ct. at 1865).

[67] *Id.*

[68] *Id.* (quoting *Butler v. Porter*, 999 F.3d 287, 295 (5th Cir. 2021)).

[69] *See, e.g.*, *Covid-19 Economic Relief*, U.S. Dep't of the Treasury, available at https://home.treasury.gov/policy-issues/coronavirus (last visited Nov. 3, 2021) (listing extensive federal economic legislation related to COVID-19).

[70] *Ziglar*, 137 S. Ct. at 1862.

---

[71] *See, e.g.*, *Raia*, 954 F.3d at 597 (compassionate release); *Umarbaev*, 453 F. Supp. 3d at 708 (habeas); *see also Ziglar*, 137 S. Ct. at 1865 (noting habeas corpus could constitute an alternative remedy for detained aliens seeking judicial redress after the September 11 attacks).

[72] *See, e.g.*, *Hand*, 2021 WL 3206833, at *4–8; *Carey v. Von Blanckensee*, 515 F. Supp. 3d 1051, 1056–59 (D. Ariz. 2021), *appeal dismissed*, No. 21-15292, 2021 WL 2026260 (9th Cir. Mar. 11, 2021); *Gater*, 2021 WL 868433, at *2–3.